UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, § | |
| § | |
| *Plaintiff,* § | |
| § | CIVIL ACTION NO. 4:24-cv-3083 |
| v. § | |
| § | **JURY DEMAND** |
| COLONY INSURANCE COMPANY, § | |
| § | |
| *Defendant.* § | |

# ADMIRAL INSURANCE COMPANY'S ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, ADMIRAL INSURANCE COMPANY, Plaintiff, and files this Original Complaint and Request for Declaratory Judgment against Colony Insurance Company, and in support thereof, would respectfully show the following:

## I. PARTIES

1. Plaintiff Admiral Insurance Company ("Admiral") is a Delaware corporation with its principal place of business in Scottsdale, Arizona.

2. Defendant Colony Insurance Company ("Colony") is a Virginia corporation with its principal place of business in Richmond, Virginia. Colony may be served through its registered agent, Corporation Service Company, at 100 Shockoe Slip Fl 2, Richmond, Virginia 23219-1400. Citation is requested at this time.

## II. JURISDICTION AND VENUE

3. The foregoing paragraphs are incorporated herein by reference.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because

the Defendant is not a citizen of any state of which the Plaintiff is also a citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Admiral is a Delaware corporation. Admiral has its principal place of business or principal office in Scottsdale, Arizona. Therefore, for diversity of citizenship purposes, Admiral is a citizen of the states of Delaware and Arizona.

6. Colony is a Virginia corporation. Colony has its principal place of business or principal office in Richmond, Virginia. Therefore, for diversity of citizenship purposes, Colony is a citizen of the state of Virginia.

7. The Court has personal jurisdiction over Defendant Colony because Colony has continuous, systematic contacts with Texas and the cause of action is related to that activity.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in the Southern District of Texas. Specifically, Colony issued a Commercial General Liability Policy to Framing Construction Logistics LLC ("Framing"), which is located in the Southern District of Texas.

## III.
## FACTUAL BACKGROUND

9. Colony issued two consecutive commercial lines policies to Framing. The first bears Policy Number 103 GL 0026006-00, and was effective from October 13, 2018, to October 13, 2019.[1] The second policy bears Policy Number 103 GL 0026006-01, and was effective from October 13, 2019, to October 13, 2020[2] (collectively, these two policies are referred to as the "Colony Policies").

---

[1] A true and correct copy of the 2018-2019 Colony policy is attached hereto as ***Exhibit "A,"*** and is incorporated by reference as if set forth fully herein.
[2] A true and correct copy of the 2019-2020 Colony policy is attached hereto as ***Exhibit "B,"*** and is incorporated by reference as if set forth fully herein.

2

10. Framing made a claim under the Colony Policies seeking defense and indemnity for a lawsuit arising out of the construction of the Greenhouse Apartments in Houston, Texas (the "Project"). The owners of Greenhouse Apartments, 29SC Greenhouse LP and TC VI Greenhouse LP ("Greenhouse"), brought suit in the 11th Judicial District of Harris County, Texas styled Cause No. 2021-09150; *29SC Greenhouse LP and TC VI Greenhouse LP v. Carter & Carter Construction, LLC, et al.* (the "Underlying Lawsuit").

11. Framing also made a claim under separate commercial general liability policies issued to it by Admiral and AmTrust Insurance Company ("AmTrust") seeking defense and indemnity for the Underlying Lawsuit.

12. Not long after Framing sought defense and indemnity for the Underlying Lawsuit pursuant to insurance policies identified in ¶¶ 10 and 11 above, Admiral, AmTrust, and Colony each agreed to share the costs of defending Framing in the Underlying Lawsuit on an equal basis. The defense by Admiral was provided under a Reservation of Rights.

13. On December 5, 2023, Colony improperly provided notice of its intent to withdraw from participation in Framing's defense in the Underlying Lawsuit, effective on December 6, 2023. On July 18, 2024, Admiral sent correspondence to Colony demanding that it resume participation in the defense of Framing in the Underlying Lawsuit and reimburse Admiral for its share of defense costs that have been incurred since the date of Colony's improper disclaimer. Colony has refused to resume its participation in the defense of Framing in the Underlying Lawsuit and has wrongfully refused to pay its share of defense costs that have been incurred since December 6, 2023.

***The Underlying Lawsuit:***

14. Framing was named in the Underlying Lawsuit on August 13, 2021, by defendant

3

Carter & Carter Construction LLC ("C&C) in its Third-Party Petition.[3]

15.     C&C's Third-Party Petition specifically references Greenhouse's allegations and asserts that "to the extent that [C&C] is found liable to [Greenhouse] for damages caused by Third-Party Defendants, [Third-Party Defendants] are liable to [C&C] for all such damages."[4] Greenhouse's live pleading against C&C is its Second Amended Petition filed on July 21, 2023.[5]

16.     Greenhouse's Second Amended Petition includes the following pertinent allegations of fact:

    a.     [C&C] completed construction of the Greenhouse Apartments in 2017, and Greenhouse purchased the Greenhouse Apartments from Greenhouse Apts, LLC in March 2020.[6]

    b.     After taking ownership of the Greenhouse Apartments, Greenhouse began receiving reports from residents of water leaks throughout the property.[7]

    c.     Greenhouse investigated the reported leaks and determined that they were and are being caused by defects and deficiencies in the work performed by and through [C&C].[8]

    d.     Due to the actions, errors, and omissions of [C&C] or its subcontractors, Greenhouse has suffered physical injury to tangible property, which has resulted in the loss of use of that property.[9]

    e.     Work and property that was not otherwise defective has been damaged by [C&C] and its subcontractor's defective work.[10]

---

[3] A true and correct copy of Carter & Carter Construction, LLC's Third Party Petition is attached hereto as **Exhibit "C,"** and is incorporated by reference as if set forth fully herein.
[4] *Id.* at ¶ 17.
[5] A true and correct copy of Plaintiffs 29SC Greenhouse LP and TC VI Greenhouse LP's Second Amended Petition is attached hereto as **Exhibit "D,"** and is incorporated by reference as if set forth fully herein.
[6] *Id.* at ¶ 15.
[7] *Id.* at ¶ 16.
[8] *Id.* at ¶ 17.
[9] *Id.* at ¶ 19.
[10] *See* **Exhibit "D,"** ¶ 19.

  f. Greenhouse has suffered the loss of use of tangible property that was not physically injured.[11]

## IV.
## COLONY HAS A DUTY TO DEFEND FRAMING IN THE UNDERLYING LAWSUIT

  17. The Colony Policies contain the following provisions that trigger a duty by Colony to defend Framing in the Underlying Lawsuit:

    \*    \*    \*

**SECTION I – COVERAGES**[12]

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for which "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(\*\*\*)

 b. This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

(\*\*\*)

**SECTION V – DEFINITIONS**[13]

(\*\*\*)

---

[11] *Id.*
[12] *See* **Exhibit "A"** and **Exhibit "B,"** Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability, Section 1 (a) and (b).
[13] *See* **Exhibit "A"** and **Exhibit "B,"** Section V – Definitions (13) and (17).

**13**.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(\*\*\*)

**17.**   "Property damage" means:

   a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

   \*          \*          \*

18.   The Colony Policies apply to "bodily injury" or "property damage." Property damage is defined by the Colony Policies as (1) physical injury to tangible property, including all resulting loss of use of that property; or (2) loss of use of tangible property that is not physically injured.[14] In the Underlying Lawsuit, Greenhouse specifically alleges that it has suffered physical injury to tangible property, which has resulted in loss of use of that property, and that it has suffered the loss of use of tangible property that was not physically injured.[15] Therefore, the Underlying Lawsuit clearly alleges "property damage" as defined by the Colony Policies.

19.   The Colony Policies' periods extend from October 13, 2018, through October 13, 2020. The Colony Policies define "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[16] In the Underlying Lawsuit,

---

[14] *Id.* at Section V – Definitions (17).
[15] *See* **Exhibit "D,"** ¶ 19.
[16] *See* **Exhibit "A"** and **Exhibit "B,"** Section V – Definitions (13).

6

Greenhouse alleges that construction on the Project was completed in 2017, and that its residents began reporting water leaks, allegedly resulting from construction defects, in March 2020, which is within the Colony Policies' periods.[17] Greenhouse alleges that work and property that was not otherwise defective have been damaged by C&C and its subcontractors' defective work.[18] Therefore, the Underlying Lawsuit alleges "property damage" that took place within the Colony Policies' periods, and was caused by an "occurrence" as defined by the Colony Policies.

20. In Colony's notice of intent to withdraw from the defense of Framing, Colony asserts that several exclusions in the Colony Policies preclude a duty to defend Framing in the Underlying Lawsuit. Those exclusions include the Colony Policies' Fungai or Bacteria Exclusion, Continuous, Progressive, or Repeated Bodily Injury or Property Damage Exclusion, and Damage to Property Exclusions j.(5) and j.(6). However, none of the exclusions in the Colony Policies preclude Colony's duty to defend Framing in the Underlying Lawsuit.[19]

21. Therefore, because the Underlying Lawsuit alleges "property damage" that took place within the Colony Policies' periods, caused by an "occurrence," Colony has a duty to defend Framing in the Underlying Lawsuit.

**V.
DECLARATORY JUDGMENT AGAINST COLONY**

22. The foregoing paragraphs are incorporated herein by reference.

23. An actual controversy exists between Admiral and Colony with respect to the duty to defend the Underlying Lawsuit. Admiral is currently defending Framing under a Reservation of

---

[17] *See* **Exhibit "D,"** ¶ 15-16.
[18] *Id.* at ¶ 19.
[19] Admiral, Colony and AmTrust may each have a limited duty, or even no duty, to ultimately indemnify Framing for damages found in the Underlying Lawsuit. The actual facts in the Underlying Lawsuit have revealed that certain allegations of damages may not qualify as "property damage" caused by an "occurrence." Other alleged damages may ultimately implicate certain exclusions, or other provisions, in each of the respective policies; however, it is the allegations in the Underlying Lawsuit that trigger a duty to defend, not the actual facts.

Rights. However, Admiral believes that Colony also has a duty to defend Framing in the Underlying Lawsuit because the Underlying Lawsuit alleges "property damage" during the Colony Policies' periods, caused by an "occurrence." Further, none of the exclusions in the Colony Policies preclude a duty to defend. Thus, interpreting the Colony Policies' express provisions, together with the allegations in the Underlying Lawsuit, establishes that Colony has a duty to defend Framing in the Underlying Lawsuit.

24. Accordingly, Admiral respectfully requests that this Court declare the rights, status, and legal obligations of the parties in connection with the facts set forth herein, the Underlying Lawsuit, the Colony Policies, and established law. Specifically, Admiral asks this Court for a declaration that Colony has a duty to defend Framing in the Underlying Lawsuit.

## VI.
## BREACH OF CONTRACT AND REIMBURSEMENT CLAIM

25. The foregoing paragraphs are incorporated herein by reference.

26. Admiral has incurred additional fees and expenses defending Framing in the Underlying Lawsuit since the date of Colony's improper withdrawal from Framing's defense on December 6, 2023. Admiral is subrogated to the rights of Framing pursuant to the express terms of the Admiral Policy. Those additional fees and expenses incurred by Admiral since December 6, 2023, should have been paid by Colony because Colony has a duty to defend Framing in the Underlying Lawsuit. Admiral is entitled to recover those reasonable fees and expenses from Colony pursuant to causes of action for breach of contract, subrogation, and/or reimbursement against Colony.

## VII.
## JURY DEMAND

27. Admiral demands a trial by jury for all issues of fact and tenders the appropriate

fee with this complaint.

## VIII.
## CONDITIONS PRECEDENT

28. All conditions precedent have been legally satisfied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff ADMIRAL INSURANCE COMPANY respectfully asks the Court for a judgment against Colony for the following:

a. A declaration that Colony has a duty to defend Framing in the Underlying Lawsuit and that Colony breached its insurance contract with Framing;

b. Recovery of Colony's share of reasonable and necessary attorneys' fees and costs incurred in defending Framing in the Underlying Lawsuit;

c. Recovery of reasonable and necessary attorneys' fees and costs incurred in prosecuting this action;

d. Costs of Court;

e. Prejudgment and post-judgment interest as provided by law; and

f. For such other and further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**RYMER, ECHOLS, SLAY
& NELSON-ARCHER, P.C.**

By: _____
Nathan M. Rymer
SBN 00792814
FIN 18902
Catherine G. Gross
SBN 24120870
FIN 3873903
1502 Augusta Drive, Suite 400
Houston, Texas 77057
Telephone: (713) 626-1550
Facsimile: (713) 626-1558
nrymer@resnlaw.com
cgross@resnlaw.com

**ATTORNEYS FOR PLAINTIFF
ADMIRAL INSURANCE COMPANY**